IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DALE G. LEWIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-10-046-JHP |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Dale G. Lewis (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ."

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally*, <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on December 4, 1960 and was 48 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant worked in the past as a greeter, machine operator, fast food cook, and laborer. Claimant alleges an

inability to work beginning February 10, 2006 due to neuropathy, depression, diabetes, and status post shoulder surgery.

### Procedural History

On December 12, 2007, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, et seq.) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On August 20, 2009, an administrative hearing was held before ALJ Martha Bower in Providence, Rhode Island and a supplemental hearing was held on September 1, 2009, also in Providence, Rhode Island. On September 16, 2009, the ALJ issued an unfavorable decision on Claimant's application. On January 4, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") sufficient to perform a full range of sedentary work with limitations.

4

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) failing to consider Claimant's low GAF scores; (2) failing to properly evaluate the opinions of Claimant's examining and treating physicians; (3) failing to properly consider Claimant's requirement of using a cane in the RFC evaluation and hypothetical questions posed to the vocational expert; and (4) improperly failing to consider Claimant's excellent work history in the last 30 years in accordance with Social Security regulations and case authority.

**Examining and Treating Physicians' Opinions**

On November 30, 2006, Claimant underwent an open MRI of his upper extremities. The impression was (1) mild AC joint arthrosis; (2) the associated bone marrow edema may represent symptomatic arthrosis; (3) Grade I strain of the proximal origins of the deltoid muscle; (4) mild supraspinatus tendinosis; and (5) a possible anterior/inferior labral tear versus labral degeneration. (Tr. 191-92).

On April 26, 2007, Claimant underwent a Neer acromioplasty and distal clavicle excision on her left shoulder performed by Dr. Philippe Cote. Dr. Cote found there were significant degenerative changes and osteophytes that were hypertrophic at the distal clavicle and also at the medial edge of the acromion. The

5

subacromial bursa was thickened and fibrotic. The rotator cuff itself was not torn and after the acromioplasty and distal clavicle excision there was no longer any impingement. (Tr. 193).

On September 10, 2007, another open MRI was performed on Claimant. The impression was (1) mild rotator cuff tendinosis; (2) mild AC joint arthrosis, noting there remained bone marrow edema of the distal clavicle and acromion, which may represent symptomatic arthrosis; and (3) stable appearance to the intersubstance signal abnormality of the anterior inferior labrum. (Tr. 195-96).

From September 29, 2006 to January 15, 2008, Claimant received treatment from the Veterans Administration Medical Center in Providence, Rhode Island for various medical conditions. Claimant was treated for obesity; osteoarthrosis; diabetes mellitus; chest pain; major depressive affective disorder, single episode; joint pain in the shoulder region; closed fracture of multiple cervical vertebrae; hyperlipidemia; internal derangement of the knee; vena cava filter; encephalitis; degeneration of lumbar or lumbosacral intervertebral disc; generalized anxiety disorder; and panic disorder without agoraphobia. (Tr. 197-98).

Claimant's GAF scores during the course of these visits were 55 on October 13, 2006, 50 on May 14, 2007, 45 on June 11, 2007, 50 on June 14, 2007, and 45 on December 20, 2007. (Tr. 223-24).

6

Claimant was hospitalized in May of 2007 for mental health issues, including depression and anxiety. Claimant was diagnosed at Axis I: Major Depressive Disorder, single episode, severe, rule out psychotic features; Generalized Anxiety Disorder; Panic Disorder, rule out OCD; Axis II: Deferred; Axis III: DM, obesity, hyperlipidemia; status post shoulder surgery; Axis IV: Moderate/Severe; Axis V: GAF of 55. (Tr. 224).

On March 7, 2008, Dr. Joseph Litchman completed a Psychiatric Review Technique form on Claimant. He found Claimant suffered from Affective Disorders, including depressive syndrome with appetite disturbance, sleep disturbance, psychomotor agitation or retardation, decreased energy, feelings of guilt or worthlessness, difficulty concentrating or thinking; and thoughts of suicide. (Tr. 368).

Dr. Litchman also found Claimant suffered from Anxiety Related Disorders characterized by motor tension, autonomic hyperactivity, apprehensive expectation, and vigilance and scanning. Claimant demonstrated a persistent irrational fear of a specific object, activity, or situation which resulted in a compelling desire to avoid the dreaded object, activity, or situation. He also showed recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending

7

doom occurring on the average of at least once a week. (Tr. 370). Dr. Litchman found Claimant was mildly limited in the areas of restriction of activities of daily living and difficulties maintaining social functioning with moderate limitation in the area of difficulties in maintaining concentration persistence, or pace. Claimant experienced episodes of decompensation of extended duration on one or two occasions. (Tr. 375).

On March 7, 2008, Dr. Litchman completed a Mental Residual Functional Capacity Assessment form on Claimant. He determined Claimant was moderately limited in the areas of the ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and ability to respond appropriately to changes in the work setting. (Tr. 379-80). Dr. Litchman noted that Claimant retained the ability to understand and remember 1 + 2 step instructions for 8-5-40 and would be able to sustain attention and concentration for 2 hour spans in an 8 hour workday. Claimant was found to be able to adjust to minor changes in routine. (Tr. 381).

8

On March 26, 2008, Dr. Youssef Georgy completed a Physical Residual Functional Capacity Assessment form on Claimant. He determined Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, and limited in the ability to push and/or pull with his upper extremities. Dr. Georgy noted Claimant had decreased light touch bilaterally in the feet with suspected diabetic sensory neuropathy. Dr. Georgy concluded Claimant was limited to only occasional balancing and was limited in his ability to reach in all directions. (Tr. 384-91).

On May 1, 2008, a Psychological Test Report was issued by Dr. John P. Parsons. Claimant appeared older than his stated age, was casually attired with fair hygiene. His gait was awkward and his posture was tense. No evidence of abnormal motor movements, bizarre mannerisms or facial tics were noted. Claimant was moderately to severely distressed and had an apprehensive manner. His speech was monotonous but intelligible. He was depressed and his affect was restricted. He experienced sleep disturbance, fatigue, and guilt. He had physical indications of anxiety. Claimant had difficulty focusing and described moderate problems with anxiety. His thought processes were distracted with no

evidence of confusion or disorientation. Claimant had difficulty with basic household chores due to pain and his short attention span. Dr. Parsons diagnosed Claimant at Axis I: Major Depressive Disorder, Moderate to Severe, Panic disorder without Agoraphobia; Rule Out Breathing Related Sleep Disorder; Axis II: Deferred; Axis III: Diabetes, type II, Hypertension, Hypercholesterolemia, peripheral neuropathy, Emphysema, History of Blood Clots, Chest Pain, Left Knee/Shoulder Pain, Head Trauma, History of Seizure Activity, and Rule Out Sleep Apnea; Axis IV: Problems related to the social environment and Occupational problems; Axis V: Current GAF of 50 with the highest GAF for the past year of 50. (Tr. 392-99).

On May 19, 2008, Dr. Parsons also completed a Supplemental Questionnaire as to Residual Functional Capacity on Claimant. He determined Claimant was moderately limited based upon his psychiatric problems in the ability to relate to people, to understand, carry out, and remember instructions, respond appropriately to supervisors and co-workers, perform simple tasks, and perform repetitive tasks. He also found Claimant's abilities were moderately to severely limited in his activities of daily living, social functioning, constrictions of interests, attention and concentration in the work setting, ability to respond to

customary work pressures, and ability to perform varied tasks. Dr. Parsons concluded Claimant was severely limited in his ability to perform complex tasks. These limitations were expected to last more than 12 months. (Tr. 400-01).

During testing from September 29, 2006 to June 18, 2008, Claimant was evaluated for GAF scores of 55 on June 12, 2007 and 45 in various visits to the Veterans Administration Medical Center from December 20, 2007 through April 30, 2008. (Tr. 432, 453, 465, 470, 476, 486, 507, 520).

On June 20, 2008, Dr. J. Stephen Clifford completed a Psychiatric Review Technique on Claimant. He found Claimant suffered from Affective Disorders diagnosed as Major Depression. (Tr. 576). Dr. Clifford also determined Claimant suffered from Anxiety-Related Disorders with generalized persistent anxiety characterized by motor tension, apprehensive expectation, and vigilance and scanning. Claimant had recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week. (Tr. 578). Dr. Clifford found Claimant was moderately limited in difficulties in maintaining concentration, persistence, or pace and that he experience one or two episodes of decompensation of extended

11

duration. (Tr. 583).

On June 20, 2008, Dr. Clifford also completed a Mental Residual Functional Capacity Assessment form on Claimant. He opined Claimant was moderately limited in the ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Clifford concluded by stating Claimant should be limited to simple procedures and instructions. He stated Claimant could focus on simple tasks but that he experiences panic attacks twice per week which would represent an infrequent interruption to work pace. (Tr. 587-89).

Records from the Veterans Administration Medical Center covering July 2, 2008 through March 13, 2009 show the reversal of normal lordotic curve and degenerative changes involving C3-6 with more significant changes observed at C4-5 and C5-6. (Tr. 656).

On August 13, 2009, a Supplemental Questionnaire as to Residual Functional Capacity was completed by Dr. Craig Kaufman. He found Claimant to have a moderately severe impairment in the ability to relate to other people, restrictions of daily

12

activities, deterioration in personal habits, constriction of interests, ability to understand, carry out, and remember instructions, ability to respond appropriately to supervision and co-workers, ability to perform simple, complex, repetitive and varied tasks. Claimant was found to be severely impaired in his ability to respond to customary work pressures. (Tr. 1232-33).

In her decision, the ALJ determined Claimant suffered from the severe impairments of major depressive disorder, a cognitive disorder, obesity, diabetes mellitus with peripheral neuropathy, obstructive sleep apnea, and residuals of a left non-dominant shoulder injury. (Tr. 9). She found Claimant retained the RFC to perform sedentary work except occasionally claim ropes, ladders, and scaffolds, occasionally use the left upper extremity for overhead reaching and pushing/pulling, and a moderate limitation in concentration, persistence, and pace such that Claimant can understand, remember, and carry out simple 1-2-3 consistent step tasks not involving independent decision making. (Tr. 12).

Taking Claimant's arguments out of order, he contends the ALJ failed to properly analyze the opinion evidence offered by Drs. Parsons and Kaufman. The ALJ gave Dr. Parsons' opinion "limited weight" because "it is the result of a one-time consultation for the sole purpose of obtaining disability benefits for the

13

claimant." (Tr. 17). The ALJ also discounted Dr. Parsons' findings of limitation because they were considered "inconsistent with treatment notes and the claimant's activities." (Tr. 17).

In evaluating any medical opinion, the ALJ is required to consider several factors including (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003); Goatcher v. U.S. Dept. of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995). The ALJ failed to evaluate Dr. Parsons' opinion under these factors. Moreover, the opinion and diagnosis of Dr. Parsons was well-supported by other medical evidence in the extensive records provided by the Veterans Administration Medical Center. Much of this evidence is in congruence with Dr. Parsons' conclusions. The ALJ did accept the opinions of non-examining, agency physicians over that of both Dr. Parsons and Dr. Kaufman.

These opinions are generally to be given less weight than those offered by examining and certainly treating physicians. 20 C.F.R. § 416.927(d)(1). The ALJ's evaluation of Dr. Parsons' opinion was wholly inadequate and without support.

In the instance of Dr. Kaufman's opinion, the ALJ did not even determine the appropriate weight the opinion should be afforded. Rather, the ALJ simply summarizes Dr. Kaufman's assessment by stating "[o]n August 13, 2009 Dr. Kaufman completed a form assessing the claimant's mental functioning as generally moderately severely impaired."  (Tr. 15).  This statement only begs the question as to what, if any, consideration the ALJ gave to this treating physician's opinion and findings of limitation. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation omitted).  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id. Even if a treating physician's opinion is not entitled to controlling weight, however, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation

omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." Watkins, 350 F.3d at 1301 (quotations omitted). On remand, the ALJ shall re-evaluate the opinion provided by Dr. Kaufman, assess the Watkins' factors, and state with an explanation the weight Dr. Kaufman's opinion is given.

### Consideration of GAF Scores

Claimant's GAF has been evaluated numerous times throughout his treatment for mental health issues. For some reason not fully vetted in her decision, the ALJ found the GAFs of 50 to 55 as reflective of Claimant's condition but the multiple findings of a GAF of 45 as "not entirely consistent with the claimant's activities or the treatment notes and are given limited weight." (Tr. 17).

Without doubt, a low GAF is not conclusive on the issue of

16

whether a claimant is unable to perform the necessary functions of employment. "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. See, Lee v. Barnhart, 2004 WL 2810224, 3 (10th Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF between 31 and 40 indicates "[s]ome impairment in reality testing or communication" or "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." A GAF between 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no

friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). However, in this case, the ALJ failed to discuss the reason she accepted the higher GAFs while rejecting the many lower GAFs. On remand, the ALJ shall at least consider the totality of the GAF testing Claimant has undergone and provide a consistent rationale for accepting or rejecting the findings.

### RFC Assessment and Hypothetical Questioning of VE

Claimant contends the ALJ should have considered Claimant's use of a cane in both her RFC evaluation and questioning of the vocational expert ("VE"). On this issue, the ALJ listed a number of limitations, including the "need to use a cane", which she rejected as "not substantiated by competent medical evidence to the

18

degree alleged." (Tr. 15).

The medical record indicates Claimant was prescribed a bariatric cane for stability. The record further states that the limitations of the cane were discussed with Claimant and the possibility of the need for a more substantial device. (Tr. 814). By rejecting the need for the cane, the ALJ effectively substituted her medical opinion for that of Claimant's treating physicians which is impermissible. <u>Sisco v. U.S. Dept. of Health & Human Servs.</u>, 10 F.3d 739, 744 (10th Cir. 1993). On remand, the ALJ shall re-evaluate the medical evidence demonstrating the necessity for the use of a cane and, unless medical circumstances have changed which expressly provide that the necessity no longer exists, the ALJ shall include the limitation in both her RFC evaluation and hypothetical questioning of the VE.

### Credibility Assessment

Claimant contends the ALJ failed to consider his long work history of 30 years in assessing the credibility of his statements of limitation. Generally, a claimant's work history should bear upon his credibility. 20 C.F.R. § 404.1529(c)(3); Soc. Sec. R. 96-7p. On remand, the ALJ shall reconsider her findings on credibility and include consideration of Claimant's prior work history.

19

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED and the matter REMANDED** for further proceedings consistent with this Order. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 8th day of September, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE